UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| JEFFREY LAWRENCE ENNIS and SANDRA V. ENNIS<br><br>            Plaintiffs,<br>   v.<br><br>BOUNDARY COUNTY, BOUNDARY COUNTY COMMISSIONERS DAN DINNING, RON SMITH, and WALT KIRBY, in their individual and official capacity; BOUNDARY COUNTY SHERIFF'S DEPARTMENT, BOUNDARY COUNTY SHERIFF GREG SPRUNGL, in his individual and official capacity, RICHARD STEPHENS, in his individual and official capacity.<br><br>            Defendants. | NO. CV-09-0449-N-BLW<br><br>MEMORANDUM DECISION AND ORDER |

Pending before the Court is Defendants' Motion for Summary Judgment (Docket No. 10). A hearing on the Motion was held July 13, 2010. Plaintiffs were represented by Larry Purviance; Defendants were represented by Peter Erbland. The Court has reviewed the file and written pleadings and heard oral argument from counsel. For the reasons explained below, the Court will grant the motion.

**BACKGROUND**

Plaintiff Jeffrey Ennis contends that Defendant Greg Sprungl terminated Ennis because he ran against Sprungl in the 2008 election for Boundary County Sheriff. Defendants contend that Ennis was terminated because he lacked POST certification as a peace officer, which Idaho law requires.

Ennis was employed as a detention deputy for the Boundary County Sheriff's Office from March 3, 1997 through March 19, 2009. (Sprungl Aff., ¶ 9). Sprungl was the Sheriff of

MEMORANDUM DECISION
AND ORDER - 1

Boundary County at the time of Ennis' hiring and termination. (Sprungl Aff., ¶ 5). However, Sprungl lost his re-election and position as Sheriff to Greg Voyles in 2000. (Sprungl Aff., ¶ 4). Sprungl was not Sheriff between January 2001 and November 2004, after which he was re-elected. (Sprungl Aff., ¶ 5). One of a sheriff's duties is to oversee the training and certification of all detention officers. (Sprungl Aff. ¶ 7).

Under Idaho law, any county detention officers employed before July 1, 1997 must be trained and certified through the Peace Officer's Standards and Training ("POST") Academy by July 1, 1999. (Idaho Code § 19-5117(2)). Additionally, a sheriff does not have the power to retain a deputy if the deputy has not become POST certified within one year of his employment. (Fegert Aff., Exh. A). Ennis was not POST certified as a peace officer during the course of his employment. (Sprungl Aff., ¶ 18).

Sprungl alleges that he advised Ennis about POST certification when Ennis was initially hired. (Sprungl Aff., ¶ 10). Ennis alleges that he did not receive notice about his lack of POST certification until January 2005. (Ennis Aff., ¶ 4). Ennis announced his intention to run against Sprungl for county Sheriff sometime in either June or early July 2008. (Ennis Aff. ¶ 4). Ennis ran against Sprungl, but Sprungl was again re-elected and re-took title as Sheriff. (Sprungl Affidavit, ¶ 6). After his announcement, Ennis contends that Sprungl took immediate action to terminate him. (Ennis Aff., ¶ 4).

On June 20, 2008, Sprungl notified Ennis in writing that he must complete certain requirements to obtain proper certification. (Sprungl Aff, ¶ 13, Exh. A). Ennis attempted to complete the applications for both POST training and certification, as well as a certification waiver during this time. (Sprungl Aff. ¶ 16, Exh. C). For the next six months, correspondence between Sprungl, Ennis and the POST Academy indicates disagreements as to whether Ennis completed his application for certification. (Sprungl Aff., ¶¶ 17-23, Exhs. D-G).

Ennis withdrew his application for new POST certification in January 2009. (Sprungl Aff., ¶ 22; Ennis Aff., ¶ 8). Sprungl submitted Ennis' application to the POST

MEMORANDUM DECISION
AND ORDER - 2

Academy anyway. (Sprungl Aff., ¶ 24, Exh. H). The POST Academy later notified Sprungl that Ennis did not meet minimum health and administrative standards (Sprungl Aff., ¶ 24, Exh. H), therefore Ennis was not eligible for certification. (Id.). Sprungl placed Ennis on suspension then terminated him on March 19, 2009. (Sprungl Aff., ¶29, ¶32, Exh. J). Sprungl cited lack of POST certification as the reason for termination. (Sprungl Aff., ¶ 32, Exh. L).

## ANALYSIS

**1. Summary Judgment Standard of Law**

One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to

MEMORANDUM DECISION
AND ORDER - 3

support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir. 2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324. The Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9thCir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003). Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).

**2. Defendants' Motion for Summary Judgment**

Defendants move for summary judgment in this case, and dismissal of Plaintiffs' Complaint in its entirety. In his Complaint, Plaintiff raises First, Fourth, Fifth, and Fourteenth Amendment claims against Defendants under 42 U.S.C. § 1983. Defendants' Motion addresses the First and Fourteenth Amendment claims, and raises various other challenges to Defendants' liability. Plaintiff's Response addresses only his First Amendment claim.

**A. Plaintiff's First Amendment claim**

In alleging violations of his constitutional rights, Ennis invokes 42 U.S.C. § 1983. To state a claim under § 1983, the plaintiff must (1) establish the deprivation of a right secured by the U.S. Constitution or federal law and (2) establish that the deprivation was committed by a person acting under color of state law. *Amer. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). Ennis claims that the Defendants deprived him of his First Amendment

MEMORANDUM DECISION
AND ORDER - 4

right to free speech by terminating him after he announced his intention to run for public office.

To evaluate a § 1983 First Amendment retaliation claim, the Court must conduct a five-step inquiry. *Eng v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009). First, the plaintiff bears the burden of showing: (1) whether the plaintiff spoke on a matter of public concern, (2) whether the plaintiff spoke as a private citizen or public employee and (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action. *Id.* If the plaintiff satisfied the first three steps, the burden shifts to the government to show (4) whether the state had an adequate justification for treating the employee differently from other members of the general public and (5) whether the state would have taken the adverse employment action regardless of the protected speech. *Id.*

Using the test outlined in *Eng* is appropriate for two reasons. First, in a § 1983 action that involves both political patronage and retaliation under the First Amendment, conducting a retaliation analysis goes to the heart of the case. *Thomas v. Carpenter*, 881 F.2d 828, 829 (9th Cir. 1989). In *Thomas*, plaintiff was a lieutenant officer who ran against his supervisor, Sheriff Carpenter, in a public election. After Thomas lost the election, he alleged that Carpenter retaliated against him by banning Thomas from department meetings and the like. *Id.* The court found an inquiry into First Amendment retaliation and not political patronage – which involves a completely different analysis – was proper.

Second, the Ninth Circuit recognized that "[i]n the forty years since *Pickering*, First Amendment law has evolved dramatically, if sometimes inconsistently." *Eng*, 552 F.3d at 1070. The Ninth Circuit created this test after "unraveling *Pickering*'s tangled history" and thus the test is appropriate to use for First Amendment retaliation cases. *Id.*[1]

---

[1] *Pickering v. Board of Education*, 391 U.S. 563 (1968) was a landmark Supreme Court case that established the law for First Amendment retaliation cases for § 1983 actions.

MEMORANDUM DECISION
AND ORDER - 5

(1) *Public concern and private citizen*

First, the parties do not dispute that running for public office is a public concern. Conduct must be related to issues of political, social or other concerns to the community sufficient to satisfy the First Amendment. *Connick v. Myers*, 461 U.S. 138, 146-147 (1983). Ennis announced his intention to run, then ran, as a candidate in the 2008 election for sheriff of Boundary County- a public concern. Second, the parties do not dispute that Ennis acted as a private citizen when he ran for sheriff in 2008. A public employee acts like a private citizen when he performs acts outside of his daily professional responsibilities. *Garcetti v. Ceballos*, 547 U.S. 410, 422 (2006). Running for public office was not part of Ennis' professional responsibilities as a detention deputy. Therefore, Ennis' speech is entitled to First Amendment protection. *Id.*

(2) *Substantial or motivating factor*

Third, Ennis must show that running for sheriff against Sprungl was a substantial or motivating factor in the state's action to terminate him. This is an element of causation and "purely a question of fact." *Eng v. Cooley*, 552 F.3d at 1071. Accordingly, the Ninth Circuit has listed three ways in which a plaintiff can raise a genuine issue of material fact. *Keyser v. Sacramento City Unified Sch. Dist.*, 265 F.3d 741, 744 (9th Cir. 2001). First, a plaintiff may introduce evidence regarding proximity in time between the protected action and the retaliatory employment decision, from which a jury could infer retaliation. *Id.* Second, a plaintiff may introduce evidence that his employer expressed opposition to his speech. *Id.* Finally, the plaintiff may introduce evidence that his employer's proferred explanations for the adverse employment actions were false and pre-textual. *Id.* Defendants do not dispute that they had knowledge of Ennis' speech.

Ennis showed that despite his lack of POST certification for almost eleven years, Sprungl did not take formal action to demand certification until after Ennis ran against Sprungl in the 2008 election. About eight months passed between Ennis' announcement

of running against Sprungl and Ennis' termination. Depending on the circumstances, an eleven month gap can support an inference of First Amendment retaliation. *Allen v. Iranon*, 283 F.3d 1070, 1078 (9th Cir. 2002). The Ninth Circuit cautions that mechanical application of a specified time period is unrealistically simplistic, however this only applies when a court states that a time period is too lengthy to support an inference of retaliation. *Anthoine v. North Central Counties Consortium*, 605 F.3d 740, 751 (9th Cir. 2010) (*citing Coszalter v. City of Salem*, 320 F.3d 968, 978-979 (9th Cir. 2003)). Given Sprungl's inability to enforce the certification policy for ten years prior, an eight month and two week period could reasonably lead a jury to infer retaliation from protected speech.

Ennis alleges that Sprungl sabotaged Ennis' attempts to apply for a POST certification waivers throughout his employment. However, the plaintiff must show evidence that his termination was "designed to retaliate against and chill political expression." *Butler v. Elle*, 281 F.3d 1014, 1028 (9th Cir. 2002) *(quoting Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986)). To support a retaliation claim, the record must demonstrate a constitutional violation. *Id*. The alleged sabotage does not relate to Ennis' First Amendment claim because his waiver attempt occurred three years before running against Sprungl. It is beyond the scope of his cause of action and is not evidence of retaliation. Additionally, while Defendants assert that Ennis had the burden of submitting his own application, the point is moot under *Butler*.[2]

At hearing, Plaintiff focused largely on whether Defendants adequately assisted his pursuit of a waiver of POST certification requirements. However, Plaintiff made no mention of the waiver argument in briefing to the Court, except for references in

---

[2]In support, Defendants seem to claim that IDAPA 11.11.01.072 obligated Ennis, not Sprungl, to submit his application. However, the law does not mention anything about a duty specific to a person in Ennis' shoes.

MEMORANDUM DECISION
AND ORDER - 7

Ennis' Affidavit. Additionally, Sprungl was not Sheriff for several years of Ennis' employment in Boundary County. This casts doubt on Ennis' allegations. The Court finds that Plaintiff has failed to demonstrate bad faith on the part of Defendants in failing to submit Plaintiff's waiver packet.

Regardless, Ennis has fulfilled his burden of proof under *Eng*. He meets the first two steps of the *Eng* test and has raised a genuine issue of material fact on the third step. The burden thus shifts to Defendants to prove the fourth and fifth prongs of the *Eng* test.

### (3) *Adverse employment action regardless of protected speech*

Defendants are entitled to summary judgment if they can demonstrate that they would have terminated Ennis regardless of his protected conduct. *Eng*, 552 F.3d at 1072. Again, Defendants bear the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux*, 263 F.3d at 1076. While courts will normally look into the fourth prong of the *Eng* test, Defendants did not address it. However, Defendants have shown that Ennis would have been terminated absent his running in an election against Sprungl.

The fifth prong asks whether the Defendants can show Ennis' protected speech was not a but-for cause of the adverse employment action. *Eng*, 552 F.3d at 1072. Even if the protected conduct was a substantial factor in deciding to terminate, the Constitution "is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct." *Mt. Healthy Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285-286 (1977). This principle is especially true if the consequences of allowing the terminated employee to continue employment are significant. *Id.* at 286.

However, the Defendants must show that it *would* have terminated Ennis, not that it *could* have. *Settlegoode v. Portland Public Schools*, 371 F.3d 503, 512 (9th Cir. 2004) (*see also Gillette v. Delmore*, 886 F.2d 1194 (9th Cir. 1989)). Again, this inquiry is "purely a question of fact." *Robinson v. York*, 566 F.3d 817, 825 (9th Cir. 2009). At the same time, district courts have broad discretion to determine an official's intent with regards to alleged

§ 1983 violations at the summary judgment stage. *Crawford-El v. Britton*, 523 U.S. 574, 600-601 (1998).

Under § 19-5117(2), all detention deputies must be POST trained and POST certified to have the authority to act as peace officers. Defendants have shown that Ennis was required by law to be POST certified. Ennis was not qualified for certification because he failed to meet minimum health and application requirements. Because Ennis never attained certification, he had no authority to be a peace officer in Boundary County. The Parties agree that Ennis has received no POST certification.

Defendants assert two additional facts to show a lack of but-for causation.

First, the parties agree that Ennis had notice of the certification requirement at least three years before he exercised his protected speech. Second, allowing Ennis to continue his employment as an uncertified officer would involve significant consequences. Employing an uncertified officer would subject Ennis, Sprungl and Boundary County to "grave consequences[,]" such as civil and criminal penalties. (Fegert Aff. Exh. A).

Defendants have not justified why it took ten years to terminate Ennis under § 19-5117(2) when they had statutory authority to do so. However, no reasonable juror could find that Ennis was entitled to a job that he held unlawfully. Even if Ennis can show triable facts of improper motive, his termination placed him in no worse position than if he had not run for sheriff's office.

In his response, Ennis cites generally to *Allen v. Irano* as "indistinguishable" from the facts at hand. When responding to a motion for summary judgment, the non-moving party must go beyond the pleadings and show that a genuine issue of material fact exists. *Celotex,* 477 U.S. at 324. Ennis expects his First Amendment retaliation claim to be vindicated without analysis. However, he has not shown how *Allen* raises a genuine issue of fact.

A salient difference between this cause of action and *Allen* is that Allen was legally entitled to his job, unlike Ennis. 283 F.3d at 1079. Based on this brief analysis, and lack

MEMORANDUM DECISION
AND ORDER - 9

direction from Ennis, the case is not sufficient to establish a genuine issue of material fact as to Ennis' claim. Accordingly, the Court should grant Defendants' motion for summary judgment on Ennis' First Amendment claim.

### B. Defendants' immunity claims

#### (1) *Qualified immunity: Sheriff Sprungl*

"Qualified immunity serves to shield government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *San Jose Charter of Hells Angels Motorcycle Club v. City of San Jose*, 402 F.3d 962, 971 (9th Cir. 2005) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). However, a state official may be held personally liable in a § 1983 action if he knew or should have known that he was violating plaintiff's constitutional rights. *Harlow*, 457 U.S. at 818.

A qualified immunity analysis consists of two prongs. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). First, whether taken in a light most favorable to the party asserting the injury, the facts alleged show that the defendant's conduct violated a constitutional right. *Id.* Second, whether that right was clearly established. *Id.* The relevant, dispositive inquiry into the second prong is whether it would be clear to a reasonable defendant that his conduct was unlawful in the particular situation he confronted. *Saucier*, 533 U.S. at 202.

Courts may use their sound discretion to decide which of the two prongs should be addressed first. *Pearson v. Callahan*, — U.S. —, 129 S. Ct. 808, 818 (2009). Finally, the plaintiff bears the burden of proving that his rights were clearly established at the time of the alleged First Amendment violation. *Moran v. State of Washington*, 147 F.3d 839, 844 (9th Cir. 1998).

Defendants contend that Sheriff Sprungl is entitled to qualified immunity on Ennis' First Amendment claim. Ennis did not respond to the qualified immunity claims

MEMORANDUM DECISION
AND ORDER - 10

in Defendants' motion. Offering no evidence that specifically rebuts facts submitted by a defendant is not sufficient to defeat a motion for summary judgment. *Kardoh v. U.S.*, 572 F.3d 697, 702 (9th Cir. 2009) (*see* Fed. R. Civ. P. 56(e)(2)). Also, when viewing the facts in a light most favorable to Ennis, no First Amendment violation can be found. Thus, Ennis has failed to meet the first prong of *Saucier*. Even if the Court finds a potential constitutional violation, Defendants allege that it would not be clear to a reasonable official that terminating Ennis was unlawful. Defendants have shown that Sprungl was compelled to terminate Ennis because Ennis failed to become POST certified.

While the timing of the termination is suspect, given § 19-5117(2), a reasonable officer would consider the act lawful. In fact, it would have been unlawful not to terminate Ennis. Additionally, Ennis has not met his burden of responding to Defendants' claims under the second prong of *Saucier*. Thus, the Court will grant Defendants' motion as to Sprungl's qualified immunity claim.

(2) **Eleventh Amendment immunity: Defendants Dinning, Smith, Kirby, and Stevens**

Defendants assert that Dan Dinning, Ron Smith, Walt Kirby, and Richard Stevens are immune from Ennis' claims under the Eleventh Amendment. The Eleventh Amendment bars suits in federal court "by private parties seeking to impose a liability which must be paid from public funds." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). State officials acting in their official capacity cannot be sued under § 1983. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). As a result, these suits "should be treated as suits against the state." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Finally, liability under § 1983 arises only upon a showing of personal participation by each defendant. *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979).

Under the Eleventh Amendment, Dinning, Smith, Kirby, and Stevens are immune from suit for actions performed in their official capacities. Further, Ennis raises no allegations

against these individuals in their personal capacities; the Complaint only asserts specific allegations against Sheriff Sprungl. The Court finds that Defendants Dinning, Smith, Kirby, and Stevens are immune under the Eleventh Amendment.

### C. Municipal liability

A municipality may be held liable under § 1983 when execution of its policy or custom inflicts a constitutional injury. *Burke v. County of Alameda*, 586 F.3d 725, 734 (9th Cir. 2009) (*citing Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978). A municipality cannot be held liable on a *respondeat superior* theory. *Monell*, 436 U.S. at 691. Ennis has not shown how a policy or custom of Boundary County compelled Sprungl to terminate Ennis for exercising his First Amendment rights. On the contrary, state law gave Sprungl the authority to terminate Ennis because he lacked POST certification. Thus, the court will grant Defendants' motion for summary judgment with respect to Boundary County.

### D. Plaintiff's Due Process Claims

Ennis makes general allegations in his Complaint that Defendants violated his due process rights. Defendants adequately countered his claim, to which the Plaintiff did not respond.

The Fourteenth Amendment to the United States Constitution bars states from depriving any person of life, liberty, or property, without due process of law. *Nordyke v. King*, 563 F.3d 439, 449 (9th Cir. 2009); U.S. Const. amend. XIV, § 1. A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Hufford v. McEnaney*, 249 F.3d 1142, 1150 (9th Cir. 2001). "A protected property interest is present where an individual has a reason-able expectation of entitlement deriving from existing rules or understandings that stem from an independent source such as state law." *Stiesberg v. California*, 80 F.3d 353, 356 (9th Cir. 1996).

MEMORANDUM DECISION
AND ORDER - 12

The Court assumes Ennis contends that he was illegally terminated from his job as a detention officer. However, his job was not a protected property interest under the Fourteenth Amendment. It is not reasonable for Ennis to expect entitlement to his job because Idaho law expressly conditions peace officer employment on meeting POST certification. Ennis has not provided any evidence too show he actually obtained certification. Therefore, he did not lose a protected property interest and his due process claim fails.

In addition to Fourteenth Amendment due process claims, Ennis asserts that the Defendants violated his Fourth and Fifth Amendment rights. Complaints must allege more than unadorned accusations. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (*citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). A complaint fails when it offers "labels and conclusions" or "'naked assertions' devoid of 'further factual enhancement.'" *Twombly*, 550 U.S. at 555, 557. Resting on allegations without factual support makes summary judgment proper. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249.

Here, Ennis asserted blanket allegations regarding his Fourth and Fifth Amendment rights, and did not enhance them with any facts. Although the Defendants did not address these claims, the Court finds it appropriate to dismiss them here, for failure to state claims on which relief can be granted.

### E. Department of Labor's decision not preclusive

In his Response, Ennis showed how the Idaho Department of Labor found Ennis' discharge was not motivated by misconduct on his part. (Ennis Aff., ¶ 3, Exh. A; *See* Idaho Code § 72-1366(e)). Defendants understand Ennis to assert that they are collaterally estopped from moving for summary judgment. In their Reply, Defendants assert that the Idaho Department of Labor findings are not preclusive in law nor in application. (Dkt. No. 17).

A state agency's determination of an issue is preclusive if it acts "in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *Astoria Federal Savings and Loan Ass'n v. Solimino*, 501 U.S. 104,

MEMORANDUM DECISION
AND ORDER - 13

107 (1991) (*quoting United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966)). The purpose of collateral estoppel is to enforce repose among litigants. *University of Tennessee v. Elliott*, 478 U.S. 788, 798 (1986). However, the issue to be precluded must be identical in substance to the issue subsequently raised. *Astoria*, 501 U.S. at 108. Ennis has not shown how the Department of Labor resolved the facts in dispute in his First Amendment retaliation claim. Particularly, it is unclear how a finding of "no misconduct" resolves the issue of being terminated regardless of protected speech. Additionally, Defendants have shown that the determination of no misconduct does not defeat their motion for summary judgment.

Idaho Code § 72-1366(e) defines the term "discharged for misconduct" as "willful, intentional disregard of the employer's interest; a deliberate violation of the employer's rules; or a disregard of standards of behavior which the employer has a right to expect of his employees." *Puckett v. Idaho Dep't of Corrections*, 107 Idaho 1022, 1023 (1985). Because the Department of Labor indicated that Ennis was terminated because he lacked POST certification yet found no misconduct, it seems both issues are not mutually exclusive. It was not Boundary County Sheriffs Office's 'rule,' 'standard of behavior,' or 'interest' that compelled Ennis' termination, but rather state law. Thus, Ennis has not overcome his burden to show that a genuine issue of material fact exists, particularly under the fifth prong of *Eng*. Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Docket No. 10) is **GRANTED**.

The Clerk of Court is directed to file this Order, provide copies to counsel and **CLOSE** this file.

**DATED** this __15th__ day of July, 2010.

s/ Wm. Fremming Nielsen
WM. FREMMING NIELSEN
SENIOR UNITED STATES DISTRICT JUDGE
Eastern District of Washington

07-14

MEMORANDUM DECISION
AND ORDER - 14